**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 95-30011
Summary Calendar
_____


RICHARD RODRIGUEZ,

Plaintiff-Appellant,

VERSUS

THE BOARD OF TRUSTEES FOR STATE
COLLEGES AND UNIVERSITIES, ET AL.,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(92-CV-2448)
_____

(July 26, 1995)

Before GARWOOD, DAVIS and JONES, Circuit Judges

PER CURIAM:[1]

Rodriguez appeals the district court's dismissal of his § 1983 suit alleging that the Southeastern University of Louisiana violated his constitutional rights by not rehiring him as a student assistant coach for the University's women's softball program. We conclude that the district court did not err in granting summary judgment in favor of the defendants and therefore affirm.

---

[1] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the court has determined that this opinion should not be published.

Richard Rodriguez, a former student at the Southeastern University of Louisiana (the "University"), filed suit against several of the University's athletic officials and the Louisiana Board of Trustees for State Colleges and Universities under 42 U.S.C. § 1983. Rodriguez's suit centers on his allegations that the University's athletic department did not renew his contract as a student assistant coach for the women's softball program during the 1992-1993 school year because of his special relationship with the women's head softball coach, Jacqueline Paddio. Rodriguez alleges that his close relationship with Coach Paddio is protected by the "associational freedom" prong of the First and Fourteenth Amendments under Roberts v. United States Jaycees, 468 U.S. 609 (1984), and that the University's failure to rehire him because of this relationship was therefore in retaliation for the exercise of his constitutional rights.

Paddio originally hired Rodriguez as a student assistant coach for the 1991-1992 school year. Rodriguez alleged that his relationship with Coach Paddio was closer than a typical employer-employee relationship. According to Rodriguez, Coach Paddio acted as his mentor and was supportive of his goal to pursue a career in coaching. Coach Paddio and Rodriguez attended outside social and religious functions together and Rodriguez was close to Paddio's family. In May 1992, Coach Paddio forwarded Rodriguez's name to the University's athletic department and recommended that he be rehired as a student assistant coach for the upcoming 1992-1993

school year.[2]  In June 1992, the athletic department notified Coach Paddio that the University would not renew her contract as head coach for the upcoming 1992-1993 school year.

At some point in July of 1992, Rodriguez approached Thomas Douple, the University's athletic director, to discuss whether he would be rehired for the upcoming school year.  Douple explained that the head coach of the softball was responsible for selecting the program's assistant coaches, and that Rodriguez would have to contact the program's new head coach before he could be rehired. At the time Rodriguez talked with Douple, the University had not officially named a new head coach.  The University hired a new head coach on July 20, 1992.  Despite Douple's instructions, Rodriguez did not contact the new head coach about the assistant coaching position.  Instead, he filed the instant suit on July 21, 1992.

Rodriguez named as defendants the Louisiana Board of Trustees for State Colleges and Universities, Douple, and two additional University officials, Dr. G. Warren Smith and Dr. Robert Butler.[3] The district court dismissed the claims against the Board on the grounds that the claims were barred by the Eleventh Amendment.  The court referred the claims against the remaining defendants to a magistrate judge. The remaining defendants then filed motions for

---

[2]     At the time, the University generally hired student assistant coaches on a yearly basis. At the end of a school year, the names of student coaches desiring re-employment during the upcoming school year had to be submitted to the University's athletic department for approval.

[3]     During the period in question, Dr. Smith was the President of the University and Dr. Butler was the University's Vice-President of Institutional Advancement.

summary judgment. The magistrate judge recommended that these motions be granted for two reasons: (1) that the relationship between Rodriguez and Coach Paddio was not protected under the associational freedom prong of the First and Fourteenth Amendments, and (2) that Rodriguez failed to create a material question of fact as to whether his relationship with Coach Paddio was a substantial or motivating factor behind the University's failure to rehire him. The district court adopted the magistrate judge's recommendations and entered summary judgment against Rodriguez. Rodriguez timely appealed.[4]

## II.

Under the framework set forth in Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977), Rodriguez bore the initial burden of demonstrating (1) that his relationship with Coach Paddio was protected by the First and Fourteenth Amendments and (2) that this relationship was a "substantial or motivating factor" behind the University's failure to rehire him. Summary judgment is appropriate if there are no genuine issues of material fact as to either element. See Young v. Biggers, 917 F.2d 873 (5th Cir. 1990). We need not decide whether Rodriguez's relationship with Coach Paddio was entitled to constitutional protection because we agree with the district court that no genuine issues of material fact were presented as to whether this relationship was a

---

[4] Rodriguez does not challenge the district court's dismissal of the Board on Eleventh Amendment grounds.

substantial or motivating factor behind the University's failure to rehire him.

The affidavits of Dr. Smith, Dr. Butler, and Mr. Douple set forth specific facts negating Rodriguez's allegations that he was not rehired because of his relationship with Coach Paddio. Dr. Smith and Dr. Butler stated that they did not know Rodriguez during the period in question and were unaware of the special relationship between him and Coach Paddio. Although Douple apparently knew that Rodriguez was an assistant coach under Coach Paddio, he stated that he did not know about the close or special nature of their relationship. Douple further explained that neither he nor any of the other defendants were responsible for failing to rehire Rodriguez. According to Douple, he told Rodriguez that Coach Paddio's successor would be responsible for selecting the assistant coach for upcoming school year. Douple states that he encouraged Rodriguez to contact the new head coach about the coaching position. According to Douple, Rodriguez was not rehired for the 1992-1993 school year because he failed to contact the new head coach and state his interest in the assistant coaching position. As a result, the new coach did not submit Rodriguez's name to the athletic department as her choice for the assistant coaching position.

Our review of the summary judgment record persuades us that Rodriguez failed to effectively negate the defendants' affidavits. Rodriguez failed to cite any facts negating the defendants' assertion that they were not aware of his special relationship with

5

Coach Paddio.[5] Moreover, Rodriguez fails to negate the defendants' assertion that they were not responsible for selecting student coaches. Rodriguez points to the fact that the out-going head coach of the University's track team was allowed to hire student assistant coaches for the upcoming 1992-1993 school year even though the University did not renew the coach's contract. According to Douple's affidavit, however, the track team's student coaches were not formally hired until they were approved by the track team's new head coach. Rodriguez's evidence does not, therefore, negate the defendants' assertions that the incoming head softball coach was ultimately responsible for selecting student softball coaches for the upcoming 1992-1993 school year.

Rodriguez also cites scattered excerpts from Douple's testimony in a related lawsuit to show that Douple and other University officials cut funding for student coaches in order to thwart his rehiring. Double apparently testified that the University eliminated the funding for student assistant coaches at some point during the summer of 1992. Rodriguez cites evidence that, despite the alleged funding cut, the University hired a student coach for the women's softball program in August of 1992. Rodriguez suggests that the alleged funding cut was part of an

_____

[5] The summary judgment record reveals that Mr. Douple knew that Rodriguez was an assistant coach under Coach Paddio. However, we do not understand Rodriguez to be arguing that a mere employer-employee relationship is protected by the First Amendment right to associational freedom. Rather, Rodriguez contends that it is the unique close relationship between him and Coach Paddio that is protected by the First Amendment.

effort by the University to prevent him from retaining his coaching position.

Rodriguez's reliance on the alleged funding cut to create a material issue of fact is unpersuasive.  Rodriguez fails to point to any evidence that Mr. Douple used the funding cut to prevent Rodriguez from being rehired.  Significantly, Rodriguez does not challenge Douple's assertion that he encouraged Rodriguez to contact the softball program's new head coach about the position.[6]  Most importantly, this evidence does not controvert the defendants' assertion that they did not know about the special relationship between Rodriguez and Coach Paddio.

In sum, our review of the summary judgment record persuades us that Rodriguez failed to raise a fact issue as to whether his relationship with Coach Paddio was a motivating factor behind the University's failure to rehire him as a student coach.  We therefore conclude that the district court did not err in granting summary judgment in favor of the defendants.

AFFIRMED.

---

[6]    Rodriguez complains that Douple would not tell him the name of the new head coach or how he could get in contact with her. Douple's affidavit reveals, however, that the new head coach had not yet been formally hired at the time Douple talked with Paddio.